UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**MERLIN DARTEZ**                                             **CIVIL ACTION**

**VERSUS**                                                    **No. 07-2653**

**CALDIVE INTERNATIONAL, INC.**                               **SECTION: I/4**

<u>ORDER AND REASONS</u>

Before the Court is a motion *in limine*[1] filed on behalf of defendant, Caldive International, Inc., ("Caldive"), to exclude the testimony of plaintiff's expert, Glenn M. Hebert ("Hebert"). For the following reasons, defendant's motion *in limine* is **GRANTED**.

*BACKGROUND*

On or about April 9, 2007, while working as the captain of a diving support vessel owned by Caldive,[2] plaintiff, Merlin Dartez ("Dartez"), tripped and fell on a rug at the top of a stairway located on the vessel.[3] Dartez alleges that, as a result of his accident, he sustained multiple injuries.[4]

On April 25, 2007, Dartez filed the above-captioned lawsuit against Caldive alleging that Dartez's accident and injuries were

---

[1] Rec. Doc. No. 46.

[2] The Caldive vessel that Dartez was working on at the time of his alleged accident is named the DSV MIDNIGHT DANCER. Rec. Doc. No. 51, p. 1.

[3] *Id.*

[4] Rec. Doc. No. 1, p. 2, para. VII.

1

caused by Caldive's conduct.[5]  Dartez retained Glenn M. Hebert, an expert in the field of vocational rehabilitation, to evaluate the effect that Dartez's alleged injuries and resulting disabilities will have on his earning capacity and the types of employment that he will be qualified for in the future.[6]

On January 8, 2008, Caldive filed this motion seeking to exclude Hebert's testimony that: (1) Dartez would likely have obtained a 1600 ton master's license, thereby increasing his earning capacity and (2) Dartez would likely be limited to part-time employment in the future, thereby decreasing his earning ability.

## LAW AND ANALYSIS

### I. STANDARD OF LAW

Rule 702 of the *Federal Rules of Evidence* governs the admissibility of expert witness testimony.  Fed. R. Civ. P. 702; *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588, 113 S. Ct. 2786, 2794, 125 L. Ed. 2d 469, 480 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006).  Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and

---

[5]*Id.*  Dartez's claims against Caldive are filed pursuant to the Jones Act and general maritime law.  *Id*. para. II.

[6]Rec. Doc. No. 51, p. 2.

>     (3) the witness has applied the principles and methods
>     reliably to the facts of the case.

The United States Supreme Court's decision in *Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 1174, 143 L. Ed. 2d 238, 249-50 (1999).

A number of nonexclusive factors may be relevant to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 Fed. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining

'*how* to test an expert's reliability.'" (*citing Kumho Tire*, 526 U.S. at 152, 119 S. Ct. at 1176, 143 L. Ed. 2d at 253)).

With respect to the determination of relevancy pursuant to Rule 702 and *Daubert*, the proposed expert testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003).

## II. *DISCUSSION*

The Court need not engage in lengthy analysis in order to dispose of Caldive's motion. As previously stated, Caldive argues that the Court should exclude Hebert's testimony that Dartez would likely have obtained a 1600 ton master's license and that Dartez would likely have never returned to full-time employment.[7]

Dartez responds to Caldive's argument by explaining that Hebert no longer intends on testifying that Dartez would have obtained a 1600 ton master's license or that Dartez would have never returned to full-time employment.[8] Hebert acknowledges that, in light of Dartez's and Dr. Partick Juneau's ("Juneau") deposition testimony, Hebert can no longer rely on his previous assumptions,

---

[7]Rec. Doc. No. 46-3.

[8]Rec. Doc. No. 51, p. 3.

as they have no basis in the record.[9]

Accordingly,

**IT IS ORDERED** that Caldive's motion *in limine* to exclude Hebert's expert testimony is **GRANTED.**


New Orleans, Louisiana, February   12th  , 2008.

                                    _____
                                           LANCE M. AFRICK
                                    UNITED STATES DISTRICT JUDGE

---

[9]*Id.*  Dartez testified that he doubted that he had the education to obtain even a 500 ton master's license.  *Id.* at p. 2.  Juneau, Dartez's surgeon, testified that, upon reaching maximum medical improvement, Dartez could return to full-time employment.  *Id.*

Dartez explains that Hebert's original report, which assumes that Dartez would have obtained a 1600 ton master's license and that Dartez would likely have never returned to full-time employment, was drafted prior to Dartez's and Juneau's depositions.  *Id.*  at p. 2.

5